UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:

    Dustin E. Harrington and                                     Case No. 13-32013
    Stacey J. Harrington,                                          Chapter 13

                           Debtors.

Appearances:

Humpleby Law Office, P.C.                                 Craig C. Humpleby, Esq.
Attorneys for Debtors
4306 East Genesee Street
Syracuse, New York 13214

The Crossmore Law Office                               Edward Y. Crossmore, Esq.
Attorneys for CFCU Community Credit Union
115 West Green Street
Ithaca, New York 14850

Mark Swimelar, Chapter 13 Trustee                   Lynn Harper Wilson, Esq.
250 South Clinton Street, Suite 203
Syracuse, NY 13202

Margaret Cangilos-Ruiz, U.S. Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

    Debtors Dustin E. Harrington and Stacey J. Harrington, residents of Cortland County, have filed a motion to avoid judicial liens as impairing their exemption in real property pursuant to § 522(f) of the United States Bankruptcy Code[1] (Doc. 20) ("Motion"). CFCU Community Credit Union ("CFCU"), which holds two of the four liens at issue, has objected to the Motion and to the Debtors' claim of exemption (Doc. 23). This memorandum-decision and order incorporates the court's findings of fact and conclusions of law in support of the entry of separate orders avoiding

---

[1] 11 U.S.C. § 101–1532 ([2013]) ("Code"), as applicable to this case on the date of filing. All sectional references are to Title 11 unless otherwise indicated.

1

judicial liens and sustains in part the objection raised to Debtors' claim of exempt property.

## FACTUAL RECORD AND PROCEDURAL BACKGROUND

**Stipulated Facts**

Debtors filed a joint chapter 13 petition on November 15, 2013 and invoked the federal exemptions pursuant to Code § 522(b)(2). Included on their Schedule A—Real Property, Debtors listed their ownership interest in the following parcels of real property, the fair market values of which are not in dispute: (i) 5072 Creal Road, Homer, New York ("Creal Road"), with a fair market value of $74,600 (ii) 8 Elm Street, McGraw, New York ("Elm Street"), with a fair market value of $71,500, and (iii) 4 Homestead Drive, Cortland, New York ("Homestead Drive"), with a fair market value of $87,200.[2]

Ownership of Creal Road is split between a remainder interest held by Debtor Dustin Harrington and a life estate held by his grandmother, Betty Baker, who was 79 when the petition was filed. NBT Bank holds a mortgage against Creal Road in the amount of $28,281.07, which was granted by Betty Baker prior to granting a remainder interest in the property to Dustin Harrington. The NBT mortgage encumbers both the life and remainder interests.

Elm Street is solely owned by Debtor Dustin Harrington. Edward N. Coombs and Christine S. Coombs hold a mortgage—executed solely by Dustin Harrington—against both Elm Street and Creal Road in the amount of $90,000.00 ("Coombs Mortgage"). There is also a $4,124 tax lien against Elm Street for unpaid real property taxes.

Debtors seek to avoid the following four judicial liens in their entirety, which are recorded

---

[2] Homestead Drive is the Debtors' residence and is encumbered by a lien held by Elmira Savings Bank in the amount of $108,584.39. Debtors claimed as exempt $1.00 of Homestead Drive's value under 11 U.S.C. § 522(d)(1). Without any equity to which judicial liens could attach, the parties have stipulated that all judicial liens against Homestead Drive should be avoided (Doc. 30 at ¶5). Accordingly, this decision only addresses the Creal Road and Elm Street properties.

2

at the Cortland County Clerk's Office:[3]

| Judicial Lien Creditor | Filing Date | Amount |
|---|---|---|
| LR Credit 23 LLC | December 20, 2012 | $ 3,329.28 |
| CFCU | July 5, 2013 | $ 16,855.39 |
| Discover Bank | July 16, 2013 | $ 1,269.44 |
| CFCU | August 5, 2013 | $ 10,858.09 |

The parties stipulated to the foregoing facts (Doc. 30) ("Stipulation").

**Claimed Exemptions**

Contemporaneous with the filing of this Motion, Debtors filed an amended claim of exemption on Schedule C (Doc. 19) ("Amended Claim"). Debtors claimed jointly a mere $1.00 of exempt equity in their jointly-held residence on Homestead Drive under § 522(d)(1). This meant that the exemption provided under § 522(d)(5) ("wildcard exemption") was available to each of them to exempt not only their interest in $1,225 of value in any property but also an additional amount up to $11,499.50, representing the unused amount of the homestead exemption provided for in § 522(d)(1).[4] In the Amended Claim, Dustin Harrington claimed only $4,909.69 of his available $12,724.50 value in wildcard exempt property under § 522(d)(5).[5] Of this amount, $1.00 was claimed on Elm Street and $3,633.69 on Creal Road. In their Amended Claim, Debtors listed the value of Dustin's remainder interest in Creal Road at $22,133.69. The Amended Claim also sought to fully exempt Dustin Harrington's tools of trade which were listed on Schedule B as solely his property at a value of $5,500. Of that value, $4,600 was claimed exempt under    §

---

[3] The court is not including the judicial lien recorded in the Cortland County Clerk's Office post-filing on November 20, 2013, by creditor Dennis J. Honour. Because Debtors filed their petition on November 15, 2013, Dennis J. Honour's judicial lien is automatically voidable under Code § 549 and will be avoided by the court.

[4] All § 522(d) references are to 11 U.S.C. § 522 (d) (effective April 1, 2013 to March 31, 2016). In 2013, the year Debtors filed for bankruptcy, § 522(d) (1) allowed a debtor to claim a "homestead" exemption in value of up to $22,975 in property used as a residence. Furthermore, § 522(d)(5) then allowed a debtor to claim (in addition to $1,225 of their interest in any property) an additional wildcard exemption of up to $11,500 of value of any unused amount of the homestead exemption allowed by § 522(d)(1).

[5] Since this was a joint filing and the residence is owned jointly by both debtors, Stacy Harrington also had an available wildcard exemption to claim up to $1,225 of value of her aggregate interest in any property plus the additional amount of up to $11.499.50. She claimed a total wildcard exemption of $2,705 in property in which she had an interest.

3

522(d)(6)[6] and $900 was claimed under the wildcard exemption of § 522(d)(5).

At the initial hearing on the Motion, the court directed the parties to stipulate to the facts that could be agreed upon and file memoranda of law in support of their countervailing positions. The Stipulation contained the facts referenced above. Exhibit A to the Stipulation, in addition to setting forth the basic facts of recording dates, lien amounts, and agreed fair market values of the properties, also referenced the amount of the exemption claimed in the Amended Claim for Creal Road and Elm Street.

A subsequent hearing was held regarding the Motion at which the court granted Debtors leave to further amend their claim of exempt property (Doc. 41). The Debtors filed an amended Schedule C, in which they increased their claimed wildcard exemption in Creal Road to $9,626.02. (Doc. 42) ("Second Amended Claim") In their Second Amended Claim, the combined Debtors ("H" & "W") claimed the following wildcard exemption under Code § 522(d)(5):

**Debtors' Claimed Wildcard Exemption in Second Amended Claim**

| Property (owner) | H's wildcard exemption | W's wildcard exemption |
|---|---|---|
| Elm Street (H) | $1.00 | |
| Creal Road (H & Betty Baker) | $9,626.02 | |
| Hyundai Sonata (W) | | $2,320.00 |
| Cash (H & W) | $125.00 | $125.00 |
| Alliance checking acc't (0651)(W) | | $5.00 |
| Alliance checking acc't (5292)(H & W) | $250.00 | $250.00 |
| CFCU savings account (W) | | $5.00 |
| Tools of the Trade (H) | $900.00 | |
| **Total:** | **$10,902.02** | **$2,705.00** |

**CFCU's Objections**

CFCU objects to Debtors' claim of exemption in their Second Amended Claim. CFCU first

---

[6] Section 522(d) (6) permitted an exemption of up to $2,300 in value in the debtor's aggregate interest in tools of the trade. Each of the joint Debtors claimed that amount.

4

objects to Debtors' ability to claim the full listed value of Debtor Dustin's hand tools by claiming $4,600 of their value under § 522(d)(6) and $900 of their value under § 522(d)(5). Since the tools are owned only by Dustin, CFCU's position is that Debtors' § 522(d)(6) exemption is limited to the amount one Debtor may claim and, if Debtors seek to claim the full value of the tools, Dustin Harrington would have to invoke an additional amount of the wildcard exemption to cover the balance of the tools' value. This would dollar-for-dollar decrease the equity claimed on the real property and make more of that equity available to satisfy some portion of the judicial liens.

CFCU then opposes the Debtors' ability to assert the Second Amended Claim on the grounds that the exemption amount previously asserted in the Amended Claim was specifically stated in the earlier Stipulation between the parties. CFCU claims an additional amendment cannot now occur, as it would prejudice CFCU's interests (Doc. 47). Both parties filed supplemental memoranda (Docs. 48, 51, 53 and 54).

As to the Motion, CFCU disputes the valuation method used by Debtors to determine Dustin's remainder interest in Creal Road to be $22,133.69. CFCU takes further issue with Debtors' application of the 522(f) formula in determining whether the judicial liens impair an exemption. CFCU objects to (i) Debtors deducting the full value of the $90,000 Coombs mortgage separately from each of the Elm Street and Creal Road property values and (ii) how the Debtor applies the NBT mortgage against the respective interests of Ms. Baker's life estate and Dustin Harrington's remainder interest.

At the final hearing on the Motion, CFCU's counsel reiterated his objection to both the filing of the Second Amended Claim and the amount of the exemptions claimed. The court requested CFCU's counsel to file a letter stating the amount(s) of the wildcard exemption that he believed Debtors were entitled to claim. CFCU's counsel filed the letter (Doc. 59). Debtors responded (Doc. 60) and the court reserved decision.

5

## DISCUSSION

The court shall address each of the foregoing objections raised by CFCU. The court shall first consider Debtors' claim of exemptions. The court shall next address the value of Debtor Dustin Harrington's remainder interest in Creal Road. Finally, the court shall consider application of the § 522(f) formula including how the outstanding mortgages are to be charged against the Debtor's interests in real property in calculating the extent to which, if any, the judicial liens impair the Debtors' exemptions.

**Debtors' Claim of Exemptions**

*Debtors' Leave to Amend Exemptions and Schedules*

CFCU requests that the court reject the Debtors' attempt to amend, for a second time, the amount of the wildcard exemptions listed on Schedule C. CFCU claims that allowing a further amendment of the exemptions would prejudice CFCU because it prepared and litigated a case based on the lower exemption amount included in the initial Amended Claim that was filed with the Motion. CFCU cites *In re Kaelin*, 308 F.3d 885, 889-90 (8th Cir. 2002), as authority for the proposition that prejudice to a creditor is an exception to the general rule allowing liberal amendment to schedules listed in Fed. R. Bank. P. 1009(a).

Other cases decided in this district have followed the analysis laid out in *Kaelin*. See *In re Howe*, 439 B.R. 257, 259-61 (N.D.N.Y. 2010); see also *In re Wiltsie*, 463 B.R. 223, 228-29 (Bankr. N.D.N.Y. 2011) (holding that there was no bad faith by the debtor or prejudice to the creditors and, as such, the debtor was allowed to amend the schedules). Nevertheless, the holding in *Kaelin* relied on case law established by *In re Doan*, 672 F.2d 831 (11th Cir. 1982), which arguably has since been abrogated by the United States Supreme Court's decision in *Law v. Siegel*, 134 S. Ct. 1188 (2014). In *Siegel*, the Supreme Court held that there is no "general, equitable power in bankruptcy courts to deny exemptions based on a debtor's bad faith conduct," *Id.* at 1196, and further stated:

6

"federal law provides no authority for bankruptcy courts to deny an exemption on a ground not specified in the code."[7] *Id.* at 1197. CFCU's counsel has not advanced any basis in the Code for denial of the exemption. Furthermore, debtors are permitted to amend their schedules as a matter of course at any time before the case is closed. Federal Rule of Bankruptcy Procedure 1009 (a).

The court finds no resulting prejudice to CFCU as a result of the Debtors' amendment. The amount of an available exemption to which a debtor is entitled can readily be determined by opposing counsel's reference to the statute. Should the exemption claimed by the debtor fall short of the statutory maximum, other parties can readily anticipate that the claim may be amended. This anticipation is part of the known calculus in deciding whether and how aggressively to oppose a debtor's 522(f) motion.

CFCU alternatively argues that the court should reject Debtors' attempt to amend their exemptions because the Debtors included their claim of exemption in the Stipulation. Stipulation at Exhibit A. "Ordinarily, admissions and stipulations of fact are binding on the parties and the court." *In re Roland*, 294 B.R. 244, 250 (Bankr. S.D.N.Y. 2003) (citing *Fisher v. First Stamford Bank & Trust Co.*, 751 F.2d 519, 523 (2d Cir. 1984); *PPX Enters., Inc. v. Audiofidelity, Inc.*, 746 F.2d 120, 123 (2d Cir. 1984)). However, there are three exceptions to the general rule: (i) parties cannot stipulate to facts that do not exist, (ii) a court is not bound by a stipulation that is manifestly unjust, or there is substantial evidence contrary to the stipulation and (iii) a court is not required to accept a stipulation regarding a question of law. *Id.* CFCU argues that none of the exceptions in *Roland* apply in this case. This court, however, disagrees. The amount of an exemption to which

---

[7] While the issue in *Siegel* was whether a bankruptcy court could order a surcharge on exempt assets in response to a debtor's misconduct for the purpose of paying attorney's fees, other courts have since interpreted its holding as overturning the holding of *In re Doan*. See *In re Saldana*, 531 B.R. 141, 161 (Bankr. N.D. Tex. 2015), aff'd in part, remanded in part, 534 B.R. 678 (N.D. Tex. 2015), appeal dismissed (Oct. 1, 2015); see also *Westry v. Lim (In re Westry)*, 591 Fed.Appx 429, 432 (6th Cir. 2014); *Gray v. Warfield (In re Gray)*, 523 B.R. 170, 173—75 (9th Cir. BAP 2014).

7

a debtor is entitled is a question of law to be determined pursuant to the language of the Code, not by the terms of a stipulation between parties. The parties may have recited the amount of wildcard exemption which the Amended Claim asserted, but that would not control as a matter of law what amount the Debtors were entitled to claim.

In light of the foregoing, Debtors' leave to assert the Second Amended Claim is recognized and the objection overruled.

### *Debtors' Claim of Exemption Pursuant to § 522(d)(6)*

Creditor's counsel objects that the Debtors' claim of $4,600 for Tools of the Trade is inappropriate because the tools in question belong only to Dustin Harrington and not to Stacey Harrington and, as such, the claim is $2,300 in excess of the amount allowable under Code § 522(d)(6). In its argument, CFCU proceeds to allocate that $2,300 to Dustin Harrington's wildcard exemption, which, when added to his $10,902.02 total above, yields $13,202.02, $477.52 in excess of the $12,724.50 allowable for his wildcard exemption under Code § 522(d)(5).[8]

In pertinent part, Code § 522(d)(6) permits a debtor to exempt, "[t]he debtor's aggregate interest, not to exceed $2,300 in value, in any implements, professional books, or tools, of the trade of the debtor..." In interpreting what constitutes an interest of the debtor in property such that it can be exempted from the estate, it has been held that "a debtor must have an ownership interest in property before an exemption may be claimed." See *In re Cohen,* 263 B.R. 724, 726 (Bkrtcy. D.NJ 2001) and the cases cited therein. Thus, in *Cohen,* the court denied the debtor-wife's claimed exemption in property which was solely owned by the debtor-husband. *Id.* In this case, Debtors' Schedule B clearly lists the tools as owned by Debtor Dustin Harrington only. Accordingly, CFCU's objection is sustained insofar as Debtors' 522(d)(6) exemption is limited to $2,300 and the

---

[8] Creditor's March 6th letter actually indicated an excess of $477.48, but the court deduced that the discrepancy between this number and the $477.52 noted above was a slight calculation error by the Creditor.

additional $2,300 asserted as exempt value in the tools is denied. Any further claim of exemption by the Debtors would require amended schedules.

**Valuation of Debtor Dustin Harrington's Remainder Interest in Creal Road**

Pursuant to an Interim Order entered by this court on August 14, 2017, the court determined that Debtor Dustin Harrington's remainder interest in Creal Road should best be determined pursuant to New York Real Property Actions and Proceedings Law ("NYRPAPL") § 403 (McKinney's Consolidated Laws of New York 2017). The court then referred valuation of the respective interests of Betty Baker and Dustin Harrington to the New York Superintendent of Financial Services ("Superintendent") as provided for in NYRPAPL § 406. (Doc. 61). By letter dated August 18, 2017, in response to this court's request, the Superintendent certified the value of Dustin Harrington's remainder interest to be $50,873.47 and the life estate of Betty Baker to be $23,726.53 (Doc. 64). Accordingly, as informed by the Superintendent's certification of value, the court finds Dustin Harrington's remainder interest in Creal Road to have a value of $50,873.47 which value shall be used in applying the 522(f) formula to determine if the judicial liens impair the Debtors' exemptions.

**Application of the Section 522(f) Formula**

In pertinent part, Code § 522(f) provides:

> (1) Notwithstanding any waiver of exemptions ... the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is –
>     (A) a judicial lien ...
>
> (2)(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of –
>     (i) the lien;
>     (ii) all other liens on the property; and
>     (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
> exceeds the value that the debtor's interest in the property would have in the absence of

9

any liens.

(B) In the case of a property subject to more than 1 lien, a lien that has been avoided shall not be considered in making the calculation under subparagraph (A) with respect to other liens.

In applying the foregoing formula to determine if judicial liens impair an exemption, the court must first decide how to treat the mortgage liens.

### *Coombs Mortgage*

As previously noted, the $90,000 Coombs Mortgage constitutes a lien encumbering both the Elm Street and Creal Road properties. In applying the formula to assess impairment of the Debtors' exemptions, Debtors urge the court to separately consider Elm Street and Creal Road and charge the full $90,000 lien against each of the properties. In the Debtors' calculation as to Elm Street, Debtors would have the court consider the most senior judicial lien ($3,329.28), plus the total of all other liens ($94,124) (representing the tax lien plus Coombs lien), plus the amount of the exemption ($1.00)[9] for a total of $97,454.28. Since this sum exceeds $71,500, representing the Debtors' interest in Elm Street absent any liens, the Debtors would argue for all judicial liens to be avoided. Debtors would then have the court similarly apply the formula as to Creal Road, which—even absent consideration of the NBT mortgage addressed below—would yield a similar result.[10]

CFCU takes issue with the Debtors' approach. It claims that by applying the 522(f) formula as suggested and counting the 90,000 lien twice, Debtors receive a windfall by creating, in effect,

---

[9] The formula would have the court start with the most junior judicial lien, to which is added: (i) the total amount of all more senior judicial liens, (ii) the total of all consensual and/or nonavoidable liens (together, "all other liens") and (iii) the amount of the exemption. Once a junior lien is deemed avoidable, it would not be taken into account in testing impairment as to the next lien. *See* § 522 (f)(B). The court's example assumes that the calculation was first performed for each of the junior judicial liens, each of which would have been found to be avoidable.

[10] Adding $3,329.28, plus the Coombs mortgage of $90,000, plus the exemption claimed of $9,626.02, yields $102,955. Since this sum exceeds $50,873.47, representing the Debtors' interest in Creal Road, all judicial liens would be avoided.

10

additional equity and an enlarged exemption in Debtors' favor to the detriment of the judicial lien creditor. CFCU urges instead that the court apply $45,000 or one-half of the Coombs mortgage to the Elm Street property and charge the other $45,000 to Creal Road (Doc. 23 at ¶17). By taking this approach, the senior judicial lien of LR Credit 23 LLC would fully survive and a portion of CFCU's judgment recorded on July 5, 2013 would be preserved. Alternatively, CFCU proposes combining the value of the Debtor's interest in the two parcels, and subtracting the value of all liens. (Doc 32 at 6). However, CFCU then assumes that the exemptions from the Initial Amended Claim stand, and applies the formula from § 522(f) such that the senior judicial lien of LR Credit 23 LLC would fully survive and a portion of CFCU's judgment recorded on July 5, 2013 would be preserved.

The statutory language of § 522(f) does not specifically address the situation before the court where a mortgage lien covers two different properties. In support of its position, CFCU cites to a Third Circuit case, *In re Simonson*, 758 F.2d 103 (3d Cir. 1985) and to a Third Circuit bankruptcy case, *In re Frameli*, 155 B.R.354 (Bankr. W.D. Pa. 1993). *Frameli* is the only § 522(f) case found to address a wrap-around mortgage covering two properties. *Frameli*, however, was decided under an earlier version of § 522(f) which simply authorized a debtor to avoid a judicial lien that impairs an exemption. The version of the statute then applicable did not additionally inform how to determine if a lien impairs an exemption. The court in *Frameli* was constrained by then-binding Third Circuit precedent which held that if the amount of consensual mortgages on a debtor's property exceeded the value of debtor's property, there would be no equity to support an exemption, and judicial liens in that instance could not be avoided. See *Simonson* at105-106 (3d Cir. 1985).

The debtors in *Frameli* owned a residence valued at $30,000 and a gas station valued at

11

$45,000, both of which secured a $71,245.76 wrap-around mortgage. The Debtors sought to avoid a judicial lien against their residence, which they had claimed as exempt. Were the court to have applied the full mortgage solely against the residential property claimed as exempt, *Simonson* would have precluded avoidance of the judicial lien. In adhering to Third Circuit jurisprudence while at the same time bending to allow the debtors to avoid judicial liens, *Frameli* distinguished its facts from those in *Simonson* by the existence of the second property that secured the mortgage lien. It determined that by combining the value of both properties before deducting the mortgage lien, the required equity component to avoid the judicial lien could be found. *Frameli* at 357.

The Bankruptcy Reform Act of 1994 codified a simple arithmetic test for determining when a lien impairs an exemption with the insertion of §522(f)(2). This determination was previously left to construction by the courts, with varying results. The legislative history of this added section makes clear that it was adopted specifically to overrule decisions including *In re Simonson* that reached results contrary to the original intent of Congress. HR Rep 103-834, 103rd Cong., 2nd Sess 35-37 (Oct. 4, 1994); 140 Cong. Rec. H10769 (Oct. 4, 1994). When resolving ambiguity in statutory language, the court "look[s] to structure, purpose, and history to determine whether these construction devices can convincingly resolve the ambiguity." *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 120 (2d Cir. 2007) (internal quotation marks omitted).

Debtors' proposed methodology for incorporating the full value of the Coombs mortgage lien into the § 522(f)(2) calculations for each parcel could technically be a correct plain language interpretation of the statute when applied to these facts. It is apparently based upon interpreting "liens on the **property**" as referring to a single parcel, with the word property read as singular. However, the "property" can also be read as plural, thus including more than one parcel. Under the present facts, the "property" which secures the Coombs lien includes both Elm Street and Creal

Road, and both parcels constitute the "property" that Debtors have claimed as exempt. Therefore, the court finds that nothing in the literal language of the statute mandates the interpretation and methodology advanced by the Debtors of applying the Coombs mortgage lien separately to each of the two parcels. Furthermore, in the opinion of this court, Debtors' approach is a strained interpretation, as it fails to recognize that Coombs' lien is entitled to only one satisfaction, and that after the lienholder is paid and exemptions recognized, equity could remain to pay some of the judgment liens which are also secured against both properties. Were the court to adopt Debtors' interpretation, the court might be allowing a larger exemption than that to which Debtors are entitled, a result certainly not intended by the statute, and inconsistent with the structure, purpose, and history of § 522(f)(2).

On the other hand, there is nothing in the statute which would direct or support CFCU's arbitrary allocation of attributing fifty per cent of the Coombs lien to Elm Street and fifty per cent of the lien to Creal Road.[11] However, CFCU's alternative approach, combining both Elm Street and Creal Road, consistent with the approach adopted by the *Frameli* court, is a realistic application of the statutory language which the Court adopts. The court shall apply the statutory formula by adding to the judicial lien under consideration: (i) all other liens encumbering Elm Street and Creal Road combined and (ii) the amount of the exemptions claimed as to both parcels. To the extent that the total exceeds the combined values of the Debtors' interests in Elm Street and Creal Road (devoid of all liens), impairment will be found.

### *Treatment of the NBT Mortgage*

It is not disputed that although Dustin Harrington did not personally assume the underlying

---

[11] Not only does it appear arbitrary in this instance, but in cases where properties are located in different counties and subject to liens in different orders of priority, splitting the lien and devising a percentage allocation among the properties would prove unwieldy and far afield of the simple arithmetic test provided by statute.

13

NBT debt, he took his remainder interest in Creal Road subject to NBT's lien, and NBT's mortgage constitutes a lien against both the life estate and the remainder interests in the property. CFCU argues, however, that since Betty Baker is personally liable on the NBT loan which is secured by the mortgage on Creal Road, her interest in the property should first be fully chargeable in satisfying NBT's lien prior to any interest of Dustin Harrington being charged with that lien.

CFCU looks to New York law in the context of surplus money proceedings in a mortgage foreclosure action that would require NBT to first look to satisfy its lien from Betty Baker's interest in the property. CFCU further cites to New York law that would recognize subrogation rights in favor of Dustin Harrington to the extent his property interest in the surplus monies was applied to satisfy the debt.

The court, however, is not deciding the rights of parties to a surplus money proceeding, nor does state law govern interpretation of the federal statute. Rather, the court looks to federal law to interpret and apply the simple, arithmetic test set forth in § 522 (f) in determining if a lien impairs an exemption. CFCU references the United States Supreme Court case of *Butner v. United States*, 440 U.S. 48, to support its invocation of state law. In *Butner*, the court resolved the conflict in the circuit courts as to how the question should be determined in bankruptcy of whether a security interest in property extends to rents and profits derived from that property: should it be resolved by reference to state law or by invoking a federal rule of equity. In its discussion, the court recognized that the constitutional power conferred on Congress to establish "uniform laws on the subject of bankruptcy" would clearly encompass the authority to adopt a statute which defined such rights but noted that Congress neglected to pass any such law, in the absence of which, the determination of a mortgagee's rights to rents and profits should be determined by state law. *Id.* at 54. In the matter at hand, Congress acted and passed a uniform law on when the debtor may avoid a judicial lien and

how impairment of an exemption by that lien should be measured. The focus should be on interpreting the specific language of the federal statute, as may be informed by state law, and not resorting to generalized principles of state law applicable in an entirely different context, not relevant to the proceeding at hand.

Section 522(f) speaks to "liens on the property." As informed by New York law and recognized by the parties, the NBT mortgage constitutes a lien against the entire property at Creal Road, regardless of the nature of the life estate and remainder interests. The encumbrance on the property affects and limits the rights of the owners including but not limited to rights of alienation, borrowing and credit. Debtors' claim of exemption is in the property itself and not in proceeds resulting from any sale of that property. As outlined in the statute, the Debtor's exemption will be protected and judicial liens avoided to the extent the liens impair that exemption.

Courts have diverged in their approach in applying the 522(f) formula where a debtor owns a partial interest in property.[12] Many of the cases address a debtor's ownership of property with that of his non-filing spouse which do not apply to the facts presented here. Upon careful consideration and mindful of how the Coombs mortgage is to be treated, the court shall proceed to apply the formula as stated above, i.e. considering as to each judicial lien the sum of: (i) all other liens encumbering the property and (ii) the amount of the exemptions claimed as to the property.

---

[12] Some courts apply the express language of the statute and net the debtor's proportionate ownership of the property against the full amount of all non-avoidable liens; see e.g., *In re Cozad*, 208 B.R. 495, 498 (BAP 10th Cir. 1997); *In re White*, 337 B.R. 686, 689-90 (Bankr. N.D. Cal. 2005). Other courts employ a "common sense" approach and net the full value of the property against the full amount of all non-avoidable liens; see e.g., *Nelson v. Scala*, 192 F.3d 32 (1st Cir. 1999); *In re Lehman*, 205 F.3d 1255 (11th Cir. 2000); *In re Martin*, 2013 WL 3956384 (Bankr. E.D.N.Y. 2013); *In re Relyea*, 2003 Bankr. LEXIS 2254 (Bankr. N.D.N.Y. 2003). Still other courts apply a modified version of the "common sense" approach and net the debtor's proportionate ownership of the property against a portion of the non-avoidable liens equal to the debtor's ownership share; see e.g. *In re Miller*, 299 F.3d 183, 186—87 (3d Cir. 2002); *In re Armenikas*, 406 B.R. 589, 617—18 (Bankr. S.D.N.Y. 2009); *In re Fox*, 353 B.R. 388, 393—94 (Bankr. D. Conn. 2006).

15

To the extent that the total exceeds the combined values of the Debtors' interests in the property (devoid of all liens), impairment will be found.

**Calculation of the Section 522(f) Formula**

Combining all unavoidable liens encumbering Elm Street and Creal Road: (($4,124 property taxes + $90,000 Coombs mortgage, + $28,281.07 NBT lien) equals $122,405.[13] This amount ($122,405) when added to the combined exemptions ($9,627) equals $132,032. The combined value of Debtors' interest in Elm Street devoid of all liens ($71,500) and Debtors' interest in Creal Road ($50,873.) is $122,373. Since $132,032 exceeds $122,373, the court finds that all of the judicial liens impair the Debtors' exemptions and may be avoided.

## CONCLUSION

Based upon the foregoing, the judicial liens of CFCU in the amount of $10,858.09, Discover Bank in the amount of $1,269.44, CFCU in the amount of $16,855.39 and LR Credit 23 LLC in the amount of $3,329.28 are avoided in full. Debtors' counsel may present separate orders avoiding each of the foregoing liens and submit a separate order vacating the judgment obtained post-petition by Dennis J. Honour.

SO ORDERED

September 22, 2017  
Syracuse, New York

Margaret Cangilos-Ruiz  
United States Bankruptcy Judge

---

[13]For ease of calculation, numbers have been rounded to the nearest dollar.